BROWNE WOODS GEORGE LLP
Edward A. Woods (SBN 54841)
Sylvia P. Lardiere (SBN 107425)
2121 Avenue of the Stars, 24th Floor
Los Angeles, CA 90067
Tel: 310.274.7100 / Fax: 310.275.5697
E-mail: ewoods@bwgfirm.com
        slardiere@bwgfirm.com

Attorneys for Plaintiffs Gary A. Freedman
And Law Offices of Gary Freedman

FILED
2009 AUG 31 PM 4:08
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY A. FREEDMAN, an individual, and LAW OFFICES OF GARY FREEDMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED NATIONAL INSURANCE CO., a Pennsylvania corporation, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. CV 09-5959 AHM (CTx)<br><br>**FIRST AMENDED COMPLAINT OF GARY A. FREEDMAN AND LAW OFFICES OF GARY FREEDMAN FOR (1) BREACH OF CONTRACT AND (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Gary A. Freedman and Law Offices of Gary Freedman (collectively "Freedman"), for claims against defendants United National Insurance Co. and Does 1-100, inclusive, allege as follows:

234685_1.DOC

## PRELIMINARY STATEMENT

1. This action arises from defendant insurance carrier's bad faith conduct in settling an absolutely meritless legal malpractice action over its insureds' objection and without its insureds' consent.

2. Plaintiffs, attorneys who were wrongfully sued for malpractice by a non-client, sought to preserve their reputation and prevent the costs of their malpractice insurance from skyrocketing by vigorously defending the case and vindicating themselves at trial. Although defendant United National Insurance Co. ("UNIG") agreed that the underlying case was meritless and encouraged plaintiffs to defend it over the course of more than four years, ultimately, it gave in to pressure exerted by plaintiffs' excess carrier, Admiral Insurance Company, invoked the "hammer clause" in its policy with plaintiffs, and settled the underlying action over plaintiffs' objection and without their consent.

3. In doing so, defendant UNIG elevated its interests above those of its insureds and plainly engaged in bad faith.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) in that the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5. Venue is proper in this district under 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this district. In addition, venue is proper in this district under 28 U.S.C. § 1391(c) in that defendant United National Insurance Co., which removed the action to this Court, is subject to personal jurisdiction in this district.

## THE PARTIES

6. Plaintiff Gary A. Freedman is an individual residing in the County of Los Angeles, State of California. Plaintiff Law Offices of Gary Freedman is the name under which Mr. Freedman practices law.

234685_1.DOC -2-

FIRST AMENDED COMPLAINT OF GARY A. FREEDMAN AND LAW OFFICES OF GARY FREEDMAN FOR (1) BREACH OF CONTRACT AND (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

7. Plaintiffs are informed and believe, and thereon allege that, at all times relevant hereto, defendant UNIG was an insurer that issued and delivered policies of insurance in the State of California.

8. Plaintiffs are unaware of the true names and capacities of each of the defendants designated and sued herein as a Doe defendant. Plaintiffs are informed and believe, and thereon allege, that each of the defendants designated herein as a Doe is in some manner responsible for the damages and injuries alleged in this complaint. Upon ascertaining the true names and capacities of the Doe defendants, plaintiffs will amend this complaint to state them.

9. Plaintiffs are informed and believe, and thereon allege, that, at all times relevant hereto, each of the defendants was the agent, servant, and/or employee of each of the other defendants and was acting within the scope of his/her/its agency, servitude, and/or employment.

## THE INSURANCE POLICIES

10. In or around September 2003, plaintiffs purchased a policy of professional liability insurance (Policy No. LAW0003928) from defendant UNIG (the "UNIG Policy"). The UNIG Policy had effective dates of coverage from March 13, 2003 to March 13, 2004.

11. In or around January 2004, plaintiffs purchased a policy of excess liability insurance (Policy No. 9356718/1) from Admiral Insurance Company ("Admiral") (the "Admiral Policy"). The Admiral Policy had effective dates of coverage from March 10, 2003 to March 10, 2004.

12. The UNIG and Admiral Policies were delivered to plaintiffs, and all premiums for both policies were paid by plaintiffs, in the State of California, County of Los Angeles.

13. Under the UNIG Policy, in consideration of the payment of the premium by plaintiffs, UNIG agreed to pay all damages in excess of the deductible that plaintiffs became legally obligated to pay as a result of claims made against

them during the policy period arising out of plaintiffs' conduct as attorneys. Under the UNIG Policy, UNIG had the duty to defend plaintiffs against any and all such claims, and to indemnify them for all damages that they became legally obligated to pay, up to $2 million.

14. Under the Admiral Policy, Admiral agreed to pay any amount in excess of $2 million, up to $5 million, that plaintiffs incurred in defending themselves or became obligated to pay as the result of any claims made against them arising out of their conduct as attorneys.

15. Under Section IIB of the UNIG policy, UNIG agreed that it would "[n]ot settle any CLAIM without the written consent of the NAMED INSURED which consent shall not be unreasonably withheld. If however, the NAMED INSURED refuses to consent to a settlement recommended by [UNIG] and elects to contest the CLAIM or continue legal proceedings in connection with such CLAIM, [UNIG's] liability for the CLAIM shall not exceed the amount for which the CLAIM could have been settled, including CLAIMS EXPENSES up to the date of such refusal, or the applicable limits of liabilty, whichever is less. . . ."

## THE UNDERLYING ACTION

16. After being served with the summons and complaint in Carol Anderson, Inc. v. Gary A. Freedman and Law Offices of Gary Freedman, Los Angeles County Superior Court, Case No. BC308559 (the "CAI Action"), plaintiffs timely and duly tendered defense of the CAI Action to UNIG and to Admiral. UNIG subsequently acknowledged receipt of the tender and agreed to defend plaintiff in the CAI Action, under a reservation of rights.

17. Based upon UNIG's reservation of rights, UNIG agreed that plaintiffs could retain counsel of their choice to defend them in the CAI Action.

18. The CAI Action had no merit. It was a legal malpractice action against plaintiffs by non-clients who had agreed, in writing, that plaintiffs were not representing them in the underlying transaction and who were independently

234685_1.DOC
-4-

represented in the underlying transaction by their own counsel. Moreover, the plaintiff in the CAI Action waived any and all damages it would have been entitled to recover, assuming liability.

19.   Throughout the four-plus years that the CAI Action was pending, UNIG and its counsel, Kenneth Feldman, repeatedly acknowledged that the CAI Action had no merit and encouraged plaintiffs to continue litigating. On April 18, 2007, when the CAI Action was mediated, UNIG took the position that it was meritless and assigned a maximum $350,000 settlement value to it, which was less than UNIG anticipated spending from that point forward to try the CAI Action.

## DEFENDANT UNIG'S BAD FAITH

20.   Suddenly, in the Spring of 2008, UNIG began pressuring plaintiffs to settle the CAI Action because Admiral was pressuring UNIG to settle within its policy limits in order to ensure that excess liability would not attach under the Admiral Policy. At that point in time, CAI was demanding $900,000 to settle the CAI Action. In a letter dated March 17, 2008 from Admiral to UNIG, Admiral stated: "if [CAI] is unwilling to budge off of its $900,000 demand, then [Admiral] requests that [UNIG] settle the case for that sum (including getting the insured to consent to the settlement by invoking the 'hammer clause' in Section II.B. of the [UNIG] policy, if necessary)."

21.   As nothing had changed in the status of the CAI Action, i.e., as it remained meritless, and because they were concerned about the adverse impact any settlement would have on their professional reputation and ability to obtain affordable malpractice insurance in the future, plaintiffs remained steadfast in their desire not to settle the CAI Action. In response to UNIG's ongoing pressure to settle the CAI Action, plaintiffs offered to release UNIG from all liability for past defense costs that had not been paid (because of the parties' dispute over plaintiffs' counsel's hourly rates), future defense costs, and UNIG's obligation to indemnify plaintiffs for any damages plaintiff became obligated to pay in the CAI Action in

exchange for the payment by UNIG to plaintiffs of the $900,000 CAI was demanding to settle. Thus, plaintiffs offered UNIG an unequivocal and full release in exchange for the same amount UNIG was prepared to pay to CAI. Alternatively, plaintiffs offered to release UNIG from all claims other than those for past defense costs that had not been paid in exchange for the payment by UNIG of $750,000 to plaintiffs.

22. UNIG rejected plaintiffs' offers to release it because of its concerns regarding Admiral's demand that it settle the CAI Action within policy limits. UNIG thus elevated its own and Admiral's interests over those of its insureds and (a) engaged in direct settlement discussions with CAI, (b) agreed to pay CAI $750,000 to settle the CAI Action, (c) sought to obtain plaintiffs' "consent" to the settlement it negotiated with CAI by invoking the "hammer clause" contained in the UNIG Policy (pursuant to which UNIG's liability in the CAI Action would not exceed $750,000 if plaintiffs did not consent to the settlement), and (d) threatened to stop paying plaintiffs' defense costs in the CAI Action if plaintiffs did not "consent."

23. Plaintiffs objected to the settlement and refused to sign the Consent to Settlement that UNIG sent to them on April 9, 2008 (the "Consent"). Given that the CAI Action had no merit and that plaintiffs had legitimate interests in safeguarding their professional reputation and in ensuring their ability to obtain affordable malpractice insurance in the future, plaintiffs' refusal to consent to the settlement with CAI was reasonable.

24. On or about June 11, 2008, despite plaintiff's refusal to execute the Consent, UNIG entered into a settlement agreement with CAI and paid CAI $750,000. Subsequently, CAI dismissed the CAI Action, with prejudice. Plaintiffs were not a party to the settlement agreement and did not provide releases to CAI, its principals, or any other individual or entity. Rather, plaintiffs reserved all rights and claims they had against all individuals and entities, including UNIG.

## FIRST CAUSE OF ACTION

### (For Breach of Contract)

### (Against UNIG and Does 1-100, inclusive)

25. Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in paragraphs 1 - 24, inclusive.

26. Plaintiffs have performed all obligations to be performed by them under the UNIG Policy, except to the extent that those obligations have been excused by the conduct of UNIG and/or to the extent plaintiffs have been prevented from performing them.

27. UNIG breached its obligations under the UNIG Policy in the following manner: After repeatedly and consistently acknowledging that the CAI Action had no merit and encouraging plaintiffs to litigate for more than four years, UNIG settled the CAI Action for $750,000, over plaintiffs' objection and without their consent, in order to protect itself and appease Admiral. In doing so, UNIG threatened to cut-off payment of future defense costs in the CAI Action, and to limit its liability for damages to $750,000.

28. As a result of UNIG's breaches of contract, plaintiffs have been damaged in an amount to be proved at trial.

## SECOND CAUSE OF ACTION

### (For Breach of the Implied Covenant of Good Faith and Fair Dealing)

### (Against Defendants UNIG and Does 1-100, Inclusive)

29. Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in paragraphs 1 - 24 and 26 - 28, inclusive.

30. Implied by law in the UNIG Policy was a duty of good faith and fair dealing prohibiting UNIG from doing anything to deprive plaintiffs of the benefits of the UNIG Policy and requiring that UNIG deal fairly and in good faith with its insureds.

234685_1.DOC                                    -7-

FIRST AMENDED COMPLAINT OF GARY A. FREEDMAN AND LAW OFFICES OF GARY FREEDMAN FOR (1) BREACH OF CONTRACT AND (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

31. UNIG breached its duty of good faith and fair dealing to plaintiffs by engaging in the conduct alleged above.

32. As the result of UNIG's breach of the implied covenant of good faith and fair dealing, UNIG is liable to plaintiffs for the economic damages and other general and specific damages that they have suffered, and continue to suffer, including, but not limited to expenses plaintiffs incurred for which coverage existed under the UNIG Policy, damage to plaintiffs' professional reputation, increased costs of malpractice insurance, and attorneys' fees and costs incurred in attempting to secure benefits under the Policy, including the prosecution of this action, all in an amount to be proved at trial.

33. The wrongful acts of UNIG alleged hereinabove were undertaken by UNIG maliciously, oppressively, and/or with the intent to defraud plaintiffs and plaintiffs are therefore entitled to punitive and exemplary damages against UNIG in an amount that is appropriate to punish UNIG and set an example.

WHEREFORE, plaintiffs pray for relief against defendants as follows:

1. For general and compensatory damages according to proof;
2. For attorneys' fees incurred in bringing this action pursuant to Section 1619 of the California <u>Insurance Code</u>;
3. For attorneys' fees incurred in obtaining policy benefits, as provided by law;
4. For prejudgment interest in an amount to be proved at the time of trial;
5. For punitive damages in an amount sufficient to deter and make an example of defendants;

6. For costs of suit incurred herein; and

7. For such other and further relief as the Court deems just and proper.

Dated: August 31, 2009

BROWNE WOODS GEORGE LLP
Edward A. Woods
Sylvia P. Lardiere

By /s/ Sylvia P. Lardiere

Attorneys for Plaintiffs Gary A. Freedman
and Law Offices of Gary Freedman

234685_1.DOC            -9-

FIRST AMENDED COMPLAINT OF GARY A. FREEDMAN AND LAW OFFICES OF GARY FREEDMAN FOR (1) BREACH OF CONTRACT AND (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs Gary A. Freedman and Law Offices of Gary Freedman hereby demand trial by jury.

Dated: August 31, 2009

BROWNE WOODS GEORGE LLP
Edward A. Woods
Sylvia P. Lardiere

By _____
Sylvia P. Lardiere

Attorneys for Plaintiffs Gary A. Freedman and Law Offices of Gary Freedman

234685_1.DOC                                           -10-

FIRST AMENDED COMPLAINT OF GARY A. FREEDMAN AND LAW OFFICES OF GARY FREEDMAN FOR (1) BREACH OF CONTRACT AND (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2121 Avenue of the Stars, 24th Floor, Los Angeles, CA 90067.

On August 31, 2009, I served the foregoing document described as: **FIRST AMENDED COMPLAINT OF GARY A. FREEDMAN AND LAW OFFICES OF GARY FREEDMAN FOR (1) BREACH OF CONTRACT AND (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; DEMAND FOR JURY TRIAL** on the parties in this action by serving:

Peter Schwartz
Christopher R. Wagner
GORDON & REES LLP
633 West Fifth Street, Suite 4900
Los Angeles, CA 90071
Telephone: 213.576.5000
Fax:           213.680.4470
E-mail:      pschwartz@gordonrees.com
                 cwagner@gordonrees.com

Chad B. Wootton
WOOTTON LAW GROUP LLP
119 1/2 N. Larchmont Blvd., Suite 2
Los Angeles, CA 90004
Telephone: 323.460.2100
Fax:           323.460.2112
E-mail: chadwootton@woottonlawgroup.com

☒   **By Envelope** - by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as above and delivering such envelopes:

☒   **By Mail**: As follows: I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on August 31, 2009, at Los Angeles, California.

☒   STATE   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
KRISTINE DIANE DE ROSA

234362_1.DOC                              -3-