O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5959 AHM (CTx) | Date | March 1, 2011 |
|---|---|---|---|

| Title | GARY A. FREEDMAN, et al. v. UNITED NATIONAL INSURANCE CO., et al. |
|---|---|

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: |
|---|---|

**Proceedings:**       IN CHAMBERS (No Proceedings Held)

This case is before the Court on the joint request of plaintiffs Gary A. Freedman and the Law Offices of Gary Freedman (collectively "Freedman") and defendant United National Insurance Co. ("UNIC") for the Court's ruling interpreting the so-called "Hammer Clause" in the professional liability insurance policy ("the Policy") that Freedman purchased from UNIC. For the reasons set forth below, the Court finds that the Policy is not ambiguous and interprets it to mean that the "Hammer Clause" may be invoked only if the insured *unreasonably* refuses to consent to a settlement. Even if the Policy were ambiguous, Freedman's interpretation is reasonable and so it would control here.

## I.     BACKGROUND

The parties and the Court are well-versed in the facts of this case, which are set forth in detail in the Court's July 6, 2010 order denying UNIC's motion for summary judgment (Docket No. 44).

At issue is the interpretation of certain language in the Policy. The two sentences the meaning of which is in dispute read as follows:

> [UNIC] shall . . . not settle any CLAIM without the written consent of the NAMED INSURED which consent shall not be unreasonably withheld. If however, the NAMED INSURED refuses to consent to a settlement recommended by [UNIC] and elects to contest the CLAIM or continue legal proceedings in

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5959 AHM (CTx) | Date | March 1, 2011 |
|---|---|---|---|
| Title | GARY A. FREEDMAN, et al. v. UNITED NATIONAL INSURANCE CO., et al. | | |

connection with such CLAIM, [UNIC's] liability for the CLAIM shall not exceed the amount for which the CLAIM could have been settled, including CLAIMS EXPENSES up to the date of such refusal, or the applicable limits of liability, whichever is less.

## II. ANALYSIS

### A. Freedman Argues the Hammer Clause May Be Invoked Only If An Insured Unreasonably Refuses to Consent to a Settlement

Freedman argues that these two sentences are not ambiguous and are susceptible to only one meaning. According to Freedman, these two sentences mean: (1) UNIC cannot settle a claim without Freedman's consent, but Freedman cannot unreasonably refuse to consent to a settlement; and (2) If Freedman does *unreasonably* refuse to consent to a settlement, then UNIC's liability for the claim is reduced to the lesser of the Policy limits or the amount for which it could have settled the claim (plus claims expenses) through the date of Freedman's refusal.

Freedman claims that if an insured *reasonably* refuses to consent to a settlement, then the Hammer Clause cannot be enforced as a matter of law. Put in positive terms, the Hammer Clause can be enforced only when an insured *unreasonably* refuses to consent. Freedman relies on *Clauson v. New England Ins. Co.* to support his argument. 254 F.3d 331, 337-38 (1st Cir. 2001).

*Clauson* arose from a malpractice suit Clauson filed in state court against an attorney, Kirshenbaum, who had represented Clauson in divorce proceedings. *Id.* at 334. During the course of the malpractice litigation, Kirshenbaum refused several offers to settle the case. *Id.* at 334-35. Kirshenbaum's insurance carrier, New England Insurance Company ("NEIC"), twice informed Kirshenbaum that his refusal to settle was unreasonable and invoked a clause in Kirshenbaum's insurance policy limiting NEIC's exposure to the amount of the rejected settlement. *Id.*

The operative language in the *Clauson* policy was as follows:

The Company shall have the right to make any investigation

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5959 AHM (CTx) | Date | March 1, 2011 |
|---|---|---|---|
| Title | GARY A. FREEDMAN, et al. v. UNITED NATIONAL INSURANCE CO., et al. | | |

> it deems necessary and with the written consent of the insured, said consent not to be unreasonably withheld, any settlement of any claim covered by the terms of this policy.
>
> If the Insured shall refuse to consent to any settlement or compromise recommended by the Company and acceptable to the claimant, and elects to contest the claim, suit or proceeding, then the Company's liability shall not exceed the amount for which the Company would have been liable for damages if the claim or suit or proceeding had been so settled or compromised, when so recommended. The Company shall have no liability for claims expenses accruing thereafter and the Company shall have the right to withdraw from the further defense thereof by tendering control of said defense to the Insured.

*Id.* at 337.

After a bench trial, the court found for Clauson and awarded him more than $97,000. *Id*. at 335. Kirshenbaum moved for a new trial. *Id*. With that motion pending, Kirshenbaum again rejected a settlement offer and NEIC relinquished control over his defense. *Id.* Kirshenbaum was eventually granted a new trial and represented himself. *Id*. The result of the second trial was exactly the same as the first, down to the penny. *Id.* at 336. NEIC paid Clauson approximately $29,000 of the judgment amount, which "it considered the limit of its liability for the judgment under the policy." *Id.*

Clauson then brought suit against NEIC in a diversity action in federal court, seeking the balance of his judgment. *Id.* "The [district] court concluded that NEIC's policy limited liability to the amount of a rejected settlement offer only when the rejection by the insured was *unreasonable*. Because the court concluded that Kirshenbaum had been *reasonable* when he refused to consent to settlement, it entered judgment for Clauson on his claim for damages." *Id.* (emphasis added). NEIC appealed.

On appeal, NEIC argued that its interpretation of the insurance policy was reasonable, claiming "that the first paragraph gives a reasonable insured the ability to frustrate settlement, while the second paragraph, with its reference to 'any settlement,'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5959 AHM (CTx) | Date | March 1, 2011 |
|---|---|---|---|
| Title | GARY A. FREEDMAN, et al. v. UNITED NATIONAL INSURANCE CO., et al. | | |

limits NEIC's liability to the amount of a rejected settlement offer . . . whether the rejection by the insured is reasonable or not." *Id.* at 337. Clauson countered that the two paragraphs "must be read together to limit NEIC's liability only when its insured's refusal to settle is unreasonable." *Id.*

The First Circuit quoted and adopted the district court's "impeccable reasoning" to the effect that NEIC's interpretation of the second paragraph conflicted with the meaning of the first paragraph. *Id.* The first paragraph, according to the district court, "confers on the insured the right to *reasonably* withhold consent." *Id.* According to NEIC's interpretation of the second paragraph, however, it could reduce its liability in the face of an insured's refusal to consent *regardless of whether the insured's refusal to consent was reasonable*. As the district court observed, under NEIC's interpretation of the policy language:

> The insured's refusal to consent to a settlement, however reasonable, would deprive the insured of the full indemnification protection for which he contracted. . . .
>
> At the very least, NEIC's interpretation of the second paragraph would render meaningless the provision [in the first paragraph] prohibiting consent from being unreasonably withheld. If coverage were reduced to the amount of a proposed settlement even where the insured reasonably refuses to consent, the prohibition against unreasonably withholding consent would be superfluous. Coverage would be reduced whether the insured acted reasonably or unreasonably. . . .

*Id.* at 337-38.

The district court then "adopted the only interpretation that gave 'effect to both provisions,' and construed the policy 'to limit NEIC's liability to the amount of the proposed settlement only if Kirshenbaum's refusal to consent was unreasonable.'" *Id.* at 338.

Although NEIC argued on appeal "that the district court erred in concluding that

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5959 AHM (CTx) | Date | March 1, 2011 |
|---|---|---|---|
| Title | GARY A. FREEDMAN, et al. v. UNITED NATIONAL INSURANCE CO., et al. | | |

[NEIC's] interpretation of its own policy was unreasonable", it never argued that the alternative interpretation adopted by the district court was unreasonable. *Id.* In other words, even if NEIC's interpretation *was* reasonable, the best result of NEIC's argument on appeal would be a conclusion that the insurance policy language was susceptible of more than one interpretation. *Id.* Under governing Rhode Island law, such an ambiguity must be interpreted in favor of the insured. *Id.* As the First Circuit therefore concluded, "the recognition of these two reasonable interpretations does nothing more than return us to the interpretation of the policy language that the district court credited, and to the ultimate conclusion that . . . NEIC was liable on the judgment against its insured up to its full policy limits." *Id.* at 339.

Freedman argues that *Clauson* is directly on point, and that the Policy must be interpreted to provide that UNIC could invoke the Hammer Clause only if Freedman's refusal to settle the malpractice action was unreasonable.

Although Freedman argues that the Policy is not ambiguous and is susceptible only to the interpretation he proposes, he notes that the result would be the same even if the Court concludes that the Policy *is* ambiguous. It is well settled in California that ambiguous insurance policy terms must be construed in favor of the insured and against the insurer. *See Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 270-72 (1984). Thus, unless Freedman's interpretation is unreasonable, the Court must adopt it.

### B. UNIC Argues the Hammer Clause May Be Invoked Even If An Insured's Refusal to Consent to a Settlement Was Reasonable

UNIC argues that the two sentences referred to by Freedman as the Hammer Clause are really two separate clauses. According to UNIC, the first sentence is the "consent clause" and "provides that UNIC can only settle a case with Freedman's written consent, but that Freedman's consent *cannot be unreasonably withheld.*" Opposition ("Opp.") p. 3. UNIC cites to several cases in support of this interpretation, but the parties do not dispute the meaning of this first sentence. The Policy clearly provides that Freedman can refuse to consent to a settlement, with the limitation that his refusal must be reasonable. The disagreement is over the meaning of the second sentence.

In UNIC's view, the second sentence, standing alone, is the entirety of the Hammer

O

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5959 AHM (CTx) | Date | March 1, 2011 |
|---|---|---|---|
| Title | GARY A. FREEDMAN, et al. v. UNITED NATIONAL INSURANCE CO., et al. | | |

Clause and it allows UNIC to limit its liability whenever Freedman refuses to consent to a settlement "regardless of the reasonableness of Freedman's refusal to consent." Opp. p. 4. UNIC claims that Freedman's proposed interpretation requires the Court to "impliedly insert the word 'unreasonably' before the phrase 'refuses to settle' in the 'hammer' clause." *Id*. UNIC then argues that California law does not permit a court to "re-write a policy to imply a non-existent term." *Id.*

UNIC cites to *Transit Cas. Co. v. Spink Corp.* in support of its interpretation of the Hammer Clause.[1] 94 Cal. App. 3d. 124 (1979), *disapproved on other grounds by Commercial Union Assur. Cos. v. Safeway Stores, Inc.*, 26 Cal. 3d 912 (1980). In *Transit*, an excess insurer brought suit against its policyholder (an engineering firm) and the primary insurer based on their refusal to settle claims arising from a construction site accident. *Id.* at 128-29. A jury awarded the excess insurer damages of $460,000. Both the engineering firm and its primary insurer appealed.

The insurance policy at issue contained the following language, which the *Transit* court deemed to be a "settlement clause":

> The company shall not settle any claim without the written consent of the insured. If, however, the insured shall refuse to consent to any settlement recommended by the company and shall elect to contest the claim or continue any legal proceedings in connection with such claim, then the company's liability for the claim shall not exceed the amount for which the claim would have settled, plus the cost and expenses incurred, with its consent, up to the date of such refusal.

---

[1] UNIC also refers to two California insurance law practice guides in support of its interpretation of the Hammer Clause. The two secondary sources both cite to *Transit* in support of the proposition that hammer clauses *may* be enforceable as a general matter, but *both* of the cited secondary sources also state that "[t]he validity of such [hammer] clauses is unsettled. Some judges view such clauses with disfavor and refuse to enforce them because they impair an insured's right to withhold consent." Cal. Ins. Law & Practice, Ch. 46, Professional Liability Insurance § 46.10 (LexisNexis 2010); Hon. H. Walter Croskey, *et al.*, California Practice Guide: Insurance Litigation (2010), § 7:2495.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5959 AHM (CTx) | Date | March 1, 2011 |
|---|---|---|---|
| Title | GARY A. FREEDMAN, et al. v. UNITED NATIONAL INSURANCE CO., et al. | | |

*Id.* at 129.

On appeal, the primary insurer argued there was a lack of evidence to support a finding that it breached an obligation to the excess insurer. *Id.* at 137. The primary insurer advanced the theory that, due to the language of the policy's settlement clause, it had no control over the engineering firm's refusal to settle. *Id.* The passage in *Transit* upon which UNIC relies to support its interpretation of the Policy's Hammer Clause is the one the *Transit* court used to reject the primary insurer's argument:

> That either carrier's hands were tied by the settlement clause is simply untrue. If invoked, the second sentence of the clause would have confronted the policyholder with a large uninsured . . . liability. By invoking that provision, either carrier could have parried the intransigence of the policyholder and very possibly avoided the later disaster to all three.

*Id.*

According to UNIC, "[t]he court in Transit [sic] found that the insurer had the right to enforce the 'hammer' clause to counteract the 'intransigence of the policyholder.' . . . But, unlike its holding regarding the consent clause . . . the court in *Transit* did *not* hold that the insurer can only invoke the 'hammer' clause if the policyholder *unreasonably* refuses to consent." Opp. p. 3.

In sum, UNIC argues that its interpretation of the Hammer Clause is consistent with California law, whereas Freedman's interpretation requires the Court to "impliedly insert" a non-existent term into the Policy language.

### C. Freedman's Interpretation of the Hammer Clause Controls

The Court finds that the analysis in *Clauson* is persuasive here. The meaning of the first sentence of the Policy's Hammer Clause must be considered together with the meaning of the second sentence. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5959 AHM (CTx) | Date | March 1, 2011 |
|---|---|---|---|
| Title | GARY A. FREEDMAN, et al. v. UNITED NATIONAL INSURANCE CO., et al. | | |

The first sentence of the Hammer Clause empowers Freedman to refuse a settlement, so long as his refusal is reasonable. Under UNIC's proposed interpretation of the second sentence, no matter how reasonable Freedman's refusal to settle, UNIC could limit its liability to the amount of a settlement plus claims expenses through the date of Freedman's refusal. This would render meaningless the first sentence and effectively would destroy Freedman's right reasonably to refuse a settlement. This problem is avoided if the second sentence is read to apply only when Freedman *unreasonably* refuses to settle. In such a circumstance, although UNIC could not settle a claim outright, it would be permitted to limit its liability to what it *could have* settled for had Freedman been acting reasonably and accepted the proposed settlement.

UNIC's efforts to distinguish *Clauson* are not persuasive. It focuses on the fact that the policy language in *Clauson* permitted the insurer to withdraw from the defense upon the insured's refusal to settle, whereas the Policy here includes no such language. According to UNIC, in *Clauson*, it was the right to withdraw from the defense – even if the insured acted reasonably – that had to be harmonized with the policy's other language granting the insured the right to refuse to consent to a settlement. But that is not what *Clauson* says. According to the *Clauson* court:

> NEIC contends that the . . . first sentence . . . means that coverage is limited to the amount of the proposed settlement in *every* case where the insured refuses to consent, without regard to whether the insured acted reasonably. However, that interpretation conflicts with the provision in the preceding paragraph requiring the insured's consent to settle.
>
> By preventing the insurer from settling without the insured's consent and prohibiting the insured from *un*reasonably [sic] withholding consent, that provision, in effect, confers on the insured the right to *reasonably* withhold consent. Construing the policy in the manner suggested by NEIC would negate that right. The insured's refusal to consent to a settlement, however reasonable, would deprive the insured of the full indemnification protection for which he contracted.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5959 AHM (CTx) | Date | March 1, 2011 |
|---|---|---|---|
| Title | GARY A. FREEDMAN, et al. v. UNITED NATIONAL INSURANCE CO., et al. | | |

254 F.3d at 337.

In the *Clauson* court's view, if the insurer could limit its liability even when the insured reasonably refused to settle – the position UNIC advances here – that would, in itself, negate the insured's right to withhold consent. The *Clauson* court then continued, "*[i]n addition*, [adopting NEIC's interpretation] would deprive the insured of the right to be defended by the insurer because the second sentence of the paragraph upon which NEIC relies would allow NEIC to withdraw from further defense." *Id.* (emphasis added). Thus, while the insurer's ability to withdraw from the defense buttressed the *Clauson* court's conclusion, it was not the keystone of its analysis. This is completely at odds with UNIC's attempt to distinguish *Clauson*, which focuses on the insurer's right to withdraw from the defense.[2]

Similarly, *Transit* is of no help to UNIC. UNIC is correct that the *Transit* court "did *not* hold that the insurer can only invoke the 'hammer' clause if the policyholder *unreasonably* refuses to consent." Opp. p. 3. But neither did the *Transit* court hold that the "hammer clause" could be invoked even when the insured *reasonably* refuses to consent, as UNIC asks the Court to allow it to do here.

Even if the Court were to deem UNIC's interpretation of the Policy to be reasonable, there is no doubt that Freedman's interpretation also is reasonable. At best, then, the Policy would be susceptible of more than one meaning and would be ambiguous. In that event, the Policy must be strictly construed in favor of the insured, and Freedman's interpretation controls. *See Delgado*, 157 Cal. App. 3d at 271 ("[A]ny ambiguity or uncertainty in an insurance policy is to be resolved against the insurer . . . .").

---

[2] Furthermore, while it is true that the Policy's Hammer Clause does not permit UNIC to withdraw from the defense completely, it *does* permit UNIC to limit its liability for claims expenses (including defense costs) to those accrued up to the date of the insured's refusal to consent. So while UNIC could not withdraw from the defense, it would not be on the hook for the continuing cost of any defense as soon as it invoked the Hammer Clause. Thus, the insured would be faced with the prospect of bearing the cost of any defense moving forward – and the vigor of the carrier's advocacy could well be diluted. If so, that would be almost as disruptive as having no counsel.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5959 AHM (CTx) | Date | March 1, 2011 |
|---|---|---|---|
| Title | GARY A. FREEDMAN, et al. v. UNITED NATIONAL INSURANCE CO., et al. | | |

## III.     CONCLUSION

For the foregoing reasons, the Court finds that the Policy is not ambiguous. The "Hammer Clause" may be invoked only if the insured *unreasonably* refuses to consent to a settlement.

No hearing is necessary.  Fed. R. Civ. P. 78; L.R. 7-15.

|  | : |  |
|---|---|---|
| Initials of Preparer | SMO | |